IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 11CA3286 |
| vs. | : | |
| CHRISTOPHER CAREY, | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| Defendant-Appellant. | : | |

_____

<u>APPEARANCES:</u>

COUNSEL FOR APPELLANT: Pamela C. Wells, 55 East Second Street, P.O. Box 97,
Chillicothe, Ohio 45601

COUNSEL FOR APPELLEE: Matthew S. Schmidt, Ross County Prosecuting Attorney,
and Jeffrey C. Marks, Assistant Prosecutor, 72 North Paint
Street, Chillicothe, Ohio 45601
_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 4-29-13
ABELE, J.

{¶ 1} This is an appeal from a Ross County Common Pleas Court judgment of

conviction/sentence, entered upon a no-contest plea, finding Christopher Carey, defendant below

and appellant herein, guilty of cocaine possession, in violation of R.C. 2925.11. The following

errors are assigned for our review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY FAILING TO DISCHARGE
THE APPELLANT, VIOLATING HIS RIGHT TO SPEEDY
TRIAL, AS GUARANTEED BY THE SIXTH AMENDMENT OF

THE UNITED STATES CONSTITUTION, ARTICLE I,
SECTION 10 OF THE OHIO CONSTITUTION, AND
STATUTE."

SECOND ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED BY DENYING APPELLANT'S
MOTION TO SUPPRESS IN VIOLATION OF THE FOURTH
AMENDMENT TO THE UNITED STATES CONSTITUTION,
SECTION 10 OF THE OHIO CONSTITUTION."

{¶ 2}  On August 19, 2010, Ohio State Trooper Benjamin Seabolt was on patrol in Scioto Township of Ross County when he observed a vehicle, traveling southbound on U.S. 23, exit onto eastbound U.S. 35.   Trooper Seabolt noted the car following too closely to the vehicle in front of it and, so, he followed it and signaled for the car to pull over.

{¶ 3}  When the driver (later identified as Carlos Smith) rolled down the window, Trooper Seabolt smelled "an overwhelming odor of burnt marijuana coming from the vehicle." He also saw flakes of marijuana on the shirt of the passenger (who was later identified as appellant).   Later, when he got appellant out of the vehicle, Trooper Seabolt gave him a pat-down for weapons and at which time he detected "a hard object about the length of [his] hand and approximately two inches wide pinched between his buttocks."

{¶ 4}  The trooper could not tell what the object was and appellant was being uncooperative with the search "refus[ing] to move his feet apart" and "jerk[ing] away from'" him.

{¶ 5}  Having no idea if the item clenched in appellant's buttocks was a weapon or not, appellant was taken to the Highway Patrol Post to determine the nature of the object.[1]   Appellant remained uncooperative but, once shed of his pants, Trooper Seabolt patted the buttocks area

---

[1]  The trooper explained that he was not about to transport appellant to jail without first ascertaining whether the object clenched in his buttocks was a weapon.

down again, while inserting his feet between appellant's so appellant could not bring his feet back together again.   This time, while patting down the object, "chunks of off-white colored rock substance began falling from [appellant's] boxer shorts."   Appellant was later transferred to jail where he remained throughout the course of the proceedings below.

{¶ 6}   On October 1, 2010, the Ross County Grand Jury returned an indictment charging appellant with possession of cocaine.   He initially pled not guilty but later changed his plea to one of "no contest."   Appellant was found guilty and sentenced to three years imprisonment. This appeal followed.

I

{¶ 7}   Appellant's first assignment of error is directed toward his June 6, 2011, motion to dismiss this case on grounds of a speedy trial violation.   Although appellant neglected to include in his motion a specific number of days he was held in jail in lieu of bond, he maintained the State "failed to afford [him] a trial within the applicable time period set forth in 2945.71 R.C."   He thus asked to be discharged pursuant to R.C. 2945.73.   His motion was denied the same day the judgment and sentencing entry were filed.   Appellant argues this was error.   We disagree.

{¶ 8}   We note at the outset that appellant's June 6, 2011, motion only raises statutory speedy trial violation.   In his assignment of error, however, he challenges the trial court's decision not only under the statute but also federal and state constitutional grounds.   This Court will not consider constitutional claims for the first time on appeal. See *State v. Stephens*, 4th Dist. No. 08CA776, 2009–Ohio–750, at ¶7; *State v. Clark*, 4th Dist. No. 07CA9, 2007–Ohio–6621, at ¶33.   This includes constitutional speedy trial claims. *State v. Cottrill*, 4th Dist. No. 11CA3270,

2012-Ohio-1525, at ¶6.   Because appellant only raised statutory speedy trial issues in his motion below, that is all that we will review on appeal.

{¶ 9}   A person against whom a felony charge is pending must be brought to trial within two hundred and seventy days of arrest. R.C. 2945.71(C)(2). If an accused is held in jail during that time, each day incarcerated is counted as three days for the purposes of the speedy trial deadline. Id. at (E).   If a defendant is not brought to trial within the prescribed deadline, the case must be dismissed. R.C. 2945.73(B).   At the same time, however, the speedy trial time can be tolled for a number of reasons set out in R.C. 2945.72.

{¶ 10}  The parties stipulated below appellant had been incarcerated in this case since August 20, 2010.   This meant appellant had to be brought to trial within ninety (90) days of that date.   Forty-eight (48) of those days elapsed between his arrest and October 7, 2010, when he filed a demand for discovery which tolled the running of the time under R.C. 2945.72(E); *State v. Brown*, 98 Ohio St.3d 121, 2002- Ohio-7040, 781 N.E.2d 159, at the syllabus.   The State argued in its memorandum contra dismissal below that it responded to this demand the same day and issued a reciprocal demand for discovery.   There is nothing in the court record to show this was true but appellant filed a "Response to Request for Reciprocal Discovery" that day supporting the State's argument.   Thus, the speedy trial clock started back up again immediately.

{¶ 11}  Fourteen (14) more days elapsed until October 22, 2010, when appellant filed a motion to suppress evidence which, once again, tolled the speedy trial limit under R.C. 2945.72(E).   The trial court's decision and judgment entry overruling that motion was filed January 19, 2011.   This started the speedy trial clock up again, though, by this time, sixty-two (62) of the ninety (90) days had already elapsed.

{¶ 12} The next tolling event occurred at a conference hearing on February 8, 2011, at which time appellant asked to be appointed new trial counsel. Twenty (20) additional days elapsed between January 19, 2011, and that date bringing the total time period to eighty-two (82) days. A transcript of that hearing clearly shows the trial court explaining to appellant: (1) the statutory speedy deadline would run the following Monday; (2) no counsel would be up to speed with the matter to try the case by then; and (3) his request for new counsel would necessarily result in the waiver of his speedy trial rights. After all of this was explained to him, the court asked how he wanted to proceed and appellant stated he wanted "[a] new attorney." Appellant's firing of his previous counsel, requiring the appointment of a new one, tolled the speedy trial time pursuant to R.C. 2945.72(C).[2] The tolling of the speedy trial statute, as a result of this request, was for a "reasonable" period of time. Id. at (H).

{¶ 13} We need not, and do not, determine whether a "reasonable" period of time expired below because, within days, new counsel filed another demand for discovery on February 11, 2011, and a motion to continue on February 23, 2011. These motions also tolled the speedy trial deadline for a reasonable amount of time. Id. Moreover, at a status conference held March 2, 2011, new defense counsel asked for additional time to review what his client called "discrepancies between the prelim [sic] hearing and the suppression hearing." The trial court informed counsel this would result in a delay and, in the end, asked him if a trial date of June 6, 2011, was "acceptable." Defense counsel answered in the affirmative. Therefore, pursuant to R.C. 2945.72(H), the speedy trial time was tolled until the trial date.

---

[2] We parenthetically note that, even if R.C. 2945.72 did not expressly toll the running of speedy trial time, appellant would be prohibited from taking advantage of any delay necessitated by his own actions under the invited error doctrine. See e.g. *State v. Hicks*, 4th Dist. No. 11CA933, 2012-Ohio-3831, at ¶11.

{¶ 14} Once the June 6, 2011, trial date arrived, appellant filed his motion to dismiss on grounds of that his speedy trial time had run.   This, again, tolled the speedy trial deadline. R.C. 2945.72(H).   That same day, appellant entered a "no contest" plea to the charges against him. His motion to dismiss for speedy trial violation came on for hearing on August 15, 2011, at which time it was overruled.

{¶ 15} To summarize, on February 8, 2011, eighty-two (82) of the statutory ninety (90) days had elapsed for statutory speedy trial purposes.   After February 8, 2011, due to appellant's request for a change of counsel, together with the numerous motions filed by new defense counsel, including a motion to dismiss for speedy trial violation on the date that the case was assigned to come on for trial, we are not persuaded that the speedy trial time ever started back up again let alone expired.   Thus, we conclude the trial court correctly overruled appellant's motion to dismiss.   His first assignment of error is overruled for these reasons.

II

{¶ 16} Appellant's second assignment of error goes to a motion to suppress evidence he filed below on October 22, 2010.   The gist of his motion was that "the arresting officer lacked probable cause or reasonable suspicion to initiate the stop [.]" The trial court filed its decision and judgment entry on January 19, 2011, overruling the motion.   Appellant argues this was error.   Again, we disagree.

{¶ 17} Initially, we note that appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998); *State v. Ward*, 4th Dist. No. 10CA30, 2011-Ohio-1261, at ¶10.   When ruling on a motion to suppress evidence, a trial court assumes

the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness's credibility. *State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

**{¶ 18}** Accordingly, a reviewing court must defer to a trial court's findings of fact if there exists competent, credible evidence to support the trial court's findings. *Long*, supra, at 332; *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist. 1996). The reviewing court is then required to independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist. 1994); *State v. Williams*, 86 Ohio App.3d 37, 41, 619 N.E.2d 1141 (4th Dist. 1993).

**{¶ 19}** The first part of appellant's argument in his motion below was that Trooper Seabolt lacked reasonable suspicion to initiate the traffic stop.   Trooper Seabolt testified at the suppression hearing, however, that he observed the vehicle in which appellant was a passenger following too close to another "gold car" and, at one point, the vehicle even had to brake hard in order to avoid hitting the gold car.   Appellant now concedes in his brief that "Trooper Seabolt had reason to lawfully detain the vehicle for a traffic violation[.]" But, appellant argues, Trooper Seabolt did not have sufficient cause to search him.   Again, we disagree.

**{¶ 20}** On stopping the vehicle in which appellant was a passenger, the Trooper related he detected an "overwhelming odor of burnt marijuana coming from the vehicle."   Further, he observed some "flakes of green plant material that [he] recognized as marijuana scattered across

[appellant's] white t-shirt."[3]   If the driver of the vehicle was the only one involved with the

marijuana, it may be fair to assume ashes might be found on appellant's t-shirt but not the raw

marijuana itself.   The trial court also noted in its judgment entry that a video/audio disc

introduced at the hearing below revealed the driver telling police "We're smoking weed."   This

statement, obviously, is phrased in the plural rather than the singular.   Trooper Seabolt also

noted the two men drove a rental car which, based on his past law enforcement experience, was a

common means of "smuggling drugs."[4]   Before the search, appellant also admitted to another

officer on the scene that he was previously "incarcerated for marijuana possession."   We readily

conclude, as did the trial court, that this was more than sufficient to justify a search of appellant's

person.

   **{¶ 21}** Appellant argues the facts in this case are similar to those in *State v. Johnson*, 186

Ohio App.3d 648, 2010-Ohio-840, 929 N.E.2d 1094[5] and, just as the Second District reversed a

ruling denying a motion to suppress, we should do so here.   We disagree.

   **{¶ 22}** First, his assertions to the contrary notwithstanding, the *Johnson* case is very

---

[3] Trooper Seabolt testified to the effect that it was part of his training to recognize both the smell of burnt marijuana as well as its appearance in raw form.

[4] The Trooper further noted that the rental car was leased to the uncle of the driver and the driver was not even allowed to operate it pursuant to the rental agreement.

[5] Appellant's actual argument in his brief is the "facts in this case are similar to that in *State v. Johnson.* 2009 Ohio 3436."   However, the Ohio Supreme Court website citation is to *State ex rel. Hughley v. Berens*, 122 Ohio St.3d 1465, 909 N.E.2d 641, 2009-Ohio-3446. Appellant's miscitation, unfortunately, has caused us no small amount of confusion.   Because the short form style citation is the same as that used for *State v. Johnson*, 186 Ohio App.3d 648, 2010-Ohio-840, 929 N.E.2d 1094, this writer assumes that is the *Johnson* case to which appellant refers.   Judge Harsha, on the other hand believes appellant is citing to   *State v. Johnson*, 10th Dist. No. 08AP—990, 2009—Ohio—3436.   Whatever the actual case, though, we reach the same result.

dissimilar to the one sub judice. That case did not even involve a car but, instead, officers noted a smell of burnt marijuana as they approached a group of men standing outside at a bus stop. Id. at ¶¶2-3. Moreover, our Second District colleagues expressly pointed out that, although the smell of burnt marijuana was noticeable, this did not involve a situation where the men were in a car and, therefore, it could not be inferred they all were involved in a common enterprise to break the law (i.e. smoke marijuana). Id. at ¶25.

{¶ 23} Indeed, the Second District was careful to distinguish the *Johnson* case from *Maryland v. Pringle*, 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 76 (2003) which present a far more similar fact pattern to the one at issue here. 2010-Ohio-840, at ¶25. In the *Pringle* case, three men were stopped in a care and police could see a wad of cash and baggies of cocaine that were accessible to all of them. 540 U.S. at 371-372. In this case of course, the driver admitted to having marijuana in his possession. But, at the same time, Trooper Seabolt could also see raw marijuana on appellant's shirt. This, combined with the vague answers both men were giving to questions asked of them, and the fact that the vehicle they were driving was a rental car – which, according to Trooper Seabolt was the type of vehicle used for transporting drugs – was sufficient for probable cause to search appellant's person.

{¶ 24} Whether authorities have reasonable suspicion or probable cause depends on the totality of the circumstances. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct.744, 151 L.Ed.2d 740 (2002); also see e.g. *State v. Payne*, 4th Dist. No. 11CA3272, 2012-Ohio-4696, at ¶19; *State v. Harris*, 4th Dist. No. 11CA3298, 2012-Ohio-4237, at ¶14. The following circumstances justified the arrest and search of appellant: (1) Trooper Seabolt observed raw marijuana flakes on appellant's tee shirt; (2) the driver told the Trooper they were both smoking

marijuana; (3) the two men were driving a rental car which is typically a modus operandi for transportation of drugs; and (4) appellant admitted to having a previous drug conviction. Moreover, Trooper Seabolt testified that once he felt something hard concealed between appellant's buttocks, and appellant would not cooperate with the search, he was fearful appellant possessed a weapon and this justified a further search at the police station.

{¶ 25} For these reasons, we find no merit to appellant's second assignment of error and it is accordingly overruled. Having considered all errors assigned by appellant and argued in his brief, and having found merit in none of them, the judgment of the trial court is hereby affirmed.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted.   The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.   The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.   Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. & Harsha, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

### NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.